1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| STEFANI STACY, | ) | 1: 12-cv-00851-LJO-BAM |
| | ) | |
| Plaintiff, | ) | **FINDINGS AND RECOMMENDATIONS** |
| | ) | **ON DEFENDANTS' MOTION TO** |
| v. | ) | **COMPEL ARBITRATION** |
| | ) | |
| BRINKER RESTAURANT | ) | |
| CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## I.   INTRODUCTION

Currently before the Court is the motion of Brinker Restaurant Corporation, Brinker International Payroll Company, L.P., and Brinker Services Corporation (collectively referred to as "Brinker") to compel arbitration and dismiss, or in the alternative, stay proceedings pending the outcome of arbitration (Brinker's "Motion to Compel"). (Doc. 10.) Plaintiff Stefani Stacy filed an opposition to Defendant's Motion to Compel on August 31, 2012. (Doc. 16.) Brinker filed its reply brief on September 7, 2012. (Doc. 18, 19.) The Court heard oral arguments on October 12, 2012. (Doc. 21.) Counsel Michael Bracamontes appeared telephonically on behalf of Plaintiff. Counsel Michael Christian appeared telephonically on behalf of Brinker. (Doc. 21.) Having considered the parties' briefs, the declarations and exhibits attached thereto, arguments presented at the October 12, 2012 hearing, as well as the Court's file, the Court issues the following findings and recommendations.

1

## II.   FACTUAL BACKGROUND

Brinker is several related businesses operating restaurant food chains.  (Pl.'s Compl., ¶¶ 4-7, Doc. 1, Attach. 1.)  In or around November 2007, Plaintiff was hired by Brinker as a server at a Chili's restaurant.  (Pl.'s Compl., ¶ 7.)  When Plaintiff was hired, she was required to fill out an employment application and sign, among other documents, a pre-dispute mandatory arbitration agreement.  (Declaration of Glenn Brown, ¶ 4, Ex. A.)  The employment application provided that "[t]he Agreement to Arbitrate accompanying this application must be read and signed in order for you to be considered for employment with the Company." *Id.*

In or around October 2008, Plaintiff relocated to a different Chili's location, owned by Brinker, and worked as a bartender.  (Pl.'s Compl., ¶ 8.)  Between the summer of 2010 and December 2011, Plaintiff alleges two managers (one male, one female) repeatedly made sexually derogative comments and conducted themselves inappropriately towards Plaintiff.  (Pl.'s Compl., ¶¶ 9-25.)  Plaintiff alleges she complained to her general manager of the misconduct, however, no action was taken.  Brinker terminated Plaintiff in December of 2011, citing Plaintiff's unsatisfactory job performance as the reason.  Plaintiff alleges her termination was pretext for gender-based discrimination, and retaliation for complaining to the general manager.

On February 23, 2012, Plaintiff filed a complaint against Brinker in the Superior Court of the State of California, County of Stanislaus. (Doc. 1, Attach. 1.)  Plaintiff alleges several gender discrimination and sexual harassment claims under the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't. Code §§ 12900, *et seq*., as well as several common law tort claims. *Id.*  On May 24, 2012, Brinker removed Plaintiff's claims to this Court pursuant to 28 U.S.C. §§ 1332(a), 1441(a) and 1446.  (Doc. 1.)

On August 10, 2012, Brinker filed the instant Motion to Compel Arbitration.  (Doc. 10.)  Brinker argues Plaintiff's claims are not properly before the Court because Plaintiff entered into an agreement to arbitrate her claims, which states in pertinent part:

> Because of, among other things, the delay and expense which result from the use of the court systems, any legal or equitable claims or disputes arising out of or in connection with employment, terms and conditions of employment, or the termination of employment with Brinker will be resolved by binding arbitration instead of in a court of law or equity. This agreement applies to all disputes

involving legally protected rights (e.g., local, state and federal statutory, contractual or common law rights) regardless of whether the statute was enacted or the common law doctrine was recognized at the time this agreement was signed. . . .

The arbitration proceedings shall take place in or near the city where the employee worked.  There will be one arbitrator chosen by mutual agreement of the parties.  If, within 60 days after the employee submits a notice of intention to arbitrate to Brinker, and no arbitrator has been chosen, then an arbitrator shall be chosen by the American Arbitration Association pursuant to its National Rules for the Resolution of Employment Disputes ("National Rules"). . . .

. . . The employee is entitled to representation by an attorney throughout the proceedings at his or her own expense.  The fees and expenses of the arbitration shall be borne by the parties, pursuant to the schedule set forth in the National Rules unless otherwise awarded by the arbitrator in the final, written decision.

(the "Agreement") (Declaration of Michael Christian, Ex. A, Doc. 12.)

### III.   LEGAL STANDARD

Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*., a written arbitration agreement is "valid, irrevocable, and enforceable" and, upon the request of either party to the agreement, a court may compel arbitration "in accordance with the terms of the agreement." 9 U.S.C. §§ 2–4. When such a request is made, the court is limited to deciding "(1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel Corp*., 533 F.3d 1114, 1119 (9th Cir. 2008) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc*., 207 F.3d 1126, 1131 (9th Cir. 2000)).

The Supreme Court has identified two types of contract-based challenges to the validity of arbitration agreements: "[o]ne type challenges specifically the validity of the agreement to arbitrate ... [and][t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement ... or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006).  Challenges to the contract's validity are first considered by the arbitrator.  *Id.*  If, however, "the crux of the complaint is ... the arbitration provision itself, then the federal courts ... must decide whether the arbitration provision is invalid and unenforceable ...." *Cox*, 533 F.3d at 1119 (quoting *Davis v. O'Melveny &

*Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007)).

The parties agree that an agreement requiring arbitration of employment disputes is not per se unconscionable, and additionally, that if the Agreement is enforceable, Plaintiff's claims fall within the scope of the Agreement.  Plaintiff, however, argues the arbitration agreement is unenforceable because it is unconscionable under California law.  (Pl.'s Opp. Mot., 1: 19-26, Doc. 16.)  Specifically, Plaintiff argues the agreement is procedurally unconscionable because is was offered as a take-it-or-leave-it condition of employment, and substantively unconscionable because it includes a waiver of Plaintiff's statutory right to recover all costs and fees (including attorneys' fees). *Id.*

Brinker responds the Agreement is not unconscionable because, under the National Rules for the American Arbitration Association cited in the Agreement, the arbitrator has the discretion to award fees and costs to either party.  Alternatively, Brinker argues if either of these provisions were unconscionable, those two provisions can be severed because the agreement is not permeated with unconscionability.

## IV.   DISCUSSION

### A.   Legal Standard for Unconscionability

While there exists a general public policy favoring the enforcement of arbitration agreements, section 2 of the FAA provides that arbitration clauses may be invalidated based "upon the same grounds as exist in law or in equity for the revocation of any contract," such as fraud, duress or *unconscionability*. 9 U.S.C. § 2 (emphasis added);  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).  The court applies ordinary state-law principles governing the formation of contracts to determine unconscionability.  *Pokorny v. Quixtar*, 601 F.3d 987, 994 (9th Cir. 2010).

"Under California law, a contractual clause is unenforceable if it is both procedurally and substantively unconscionable."[1] *Davis*, 485 F.3d at 1072.  Procedural unconscionability focuses on oppression or surprise due to unequal bargaining power, while substantive unconscionability

---

[1]  The parties agree California contract law applies.

4

1   focuses on overly-harsh or one-sided results. *Stirlen v. Supercuts, Inc.*, 51 Cal.App.4th 1519,

2   1532, 60 Cal.Rptr.2d 138 (1997).  While both types of unconscionability must be present in order

3   for a court to find a contract unenforceable, it is not necessary that they be present in the same

4   degree. *Davis*, 485 F.3d at 1072.  For this reason, "[c]ourts apply a sliding scale: 'the more

5   substantively oppressive the contract term, the less evidence of procedural unconscionability is

6   required to come to the conclusion that the term is unenforceable, and vice versa.' " *Id*. (quoting

7   *Armendariz v. Found. Health Psychcare Servs., Inc*., 24 Cal.4th 83, 114, 99 Cal.Rptr.2d 745,

8   767, 6 P.3d 669 (2000)).

9   **B.     Procedural Unconscionability**

10         For procedural unconscionability, the court first "focuses on whether the contract was one

11   of adhesion." *Soltani v. W. & S. Life Ins. Co.*, 258 F.3d 1038, 1042 (9th Cir.2001); *Armendariz,*

12   24 Cal.4th at 113.  An adhesion contract is a standardized contract which is imposed on a party

13   of weaker bargaining strength on a take-it or leave-it basis.  *Armendariz*, 24 Cal.4th at 113.  In

14   other words, the Court inquires into whether the contract was imposed as a condition of

15   employment, and if the employee had an opportunity to negotiate.  *Soltani*, 258 F.3d at 1042

16   (quoting *Armendariz*, 24 Cal.4th at 115).  "[W]hen a party who enjoys greater bargaining power

17   than another party presents the weaker party with a contract without meaningful opportunity to

18   negotiate, oppression and, therefore, procedural unconscionability, are present." *Ingle v. Circuit*

19   *City Stores*, Inc., 328 F.3d 1165, 1172 (9th Cir.2003).

20         Generally, under California law, pre-dispute mandatory arbitration agreements made a

21   condition of employment are procedurally unconscionable.  *See, Bridge Fund Capital Corp. v.*

22   *Fastbucks Franchise Corp*., 622 F.3d 996, 1004 (9th Cir. 2010) ("California law treats contracts

23   of adhesion, or at least terms over which a party of lesser bargaining power had no opportunity to

24   negotiate, as procedurally unconscionable to at least some degree"); *Ingle v. Circuit City Stores,*

25   *Inc.,* 328 F.3d 1165, 1170 (9th Cir. 2003) (It is "procedurally unconscionable to require

26   employees, as a condition of employment, to waive their right to seek redress of grievance in a

27   judicial forum"); *Armendariz*, 24 Cal.4th at 113 (Employer's arbitration agreement procedurally

28   unconscionable because it was adhesive, imposed on employees as a condition of employment,

and there was no opportunity for them to negotiate);  *Martinez v. Master Protection Corp.*, 118 Cal.App.4th 107, 12 Cal.Rptr.3d 663 (2004) (Employer's arbitration agreement was procedurally unconscionable because it was "a prerequisite of his employment" and the employee did not have an "opportunity to negotiate or refuse to sign the arbitration agreement")*; Aral v. Earthlink, Inc.,* 134 Cal. App. 4th 544, 557 (2005) (an arbitration clause on a "take it or leave it" basis constitutes "quintessential procedural unconscionability").

Some courts, however, have determined the Supreme Court's decision in *AT&T Mobility v. Concepcion,* –U.S.–, 131 S.Ct. 1740, 179 L.Ed. 2d 742 (2011), casts doubt on the continuing viability of this general unconscionability principle.  In *Concepcion,* the Supreme Court reviewed a California rule that often found class action waivers in adhesion contracts unconscionable (the *"Discover Bank* Test") was preempted by the FAA.   Addressing a portion of the *Discover Bank* test requiring the disputed contracts be one of adhesion, *Concepcion* noted that "the times in which consumer contracts were anything other than adhesive are long past." *Id.* at 1750.

Some courts have interpreted *Concepcion* as requiring more than a "take-it-or-leave-it" contract to justify a finding of procedural unconscionability. *See, e.g., Mance v. Mercedes-Benz USA,* 2012 WL 4497369 (N.D. Cal. 2012) ("The clear import of *Concepcion*, though, pushes against finding that an adhesive contract, without more, is *per se* procedurally unconscionable")*; Grabowski v. C.H. Robinson Co.*, 2011 WL 4353998 (S.D. Cal. Sep. 19, 2011) ("Plaintiff has presented evidence that the agreements were presented on a 'take it or leave [it]' basis, with little or no option for the employee to negotiate. In light of the Supreme Court's decision in *Concepcion*, however, the Court does not find that the adhesive nature of the agreement weighs strongly in favor of procedural unconscionability.")

Other courts, however, have found that *Concepcion* did not alter the landscape of procedural unconscionability. *See, e.g., Kanbar v. O'Melveny & Myers*, 849 F. Supp. 2d 902, 910 (N.D. Cal. 2011) (holding that, post-*Concepcion*, a contract presented on a "take-it-or-leave-it condition of employment" is procedurally unconscionable); *Hwang v. J.P. Morgan Chase Bank, N.A.,* 2012 WL 3862338 (C.D. Cal. 2012) (post-*Concepcion*, finding procedural unconscionability because "the arbitration agreements all stated that they were a condition of

employment and there is no indication that any of the Plaintiffs had an opportunity to negotiate the terms of the arbitration agreements"); *Smith v. Americredit Financial Services, Inc.,* 2012 WL 834784 (S.D. Cal. 2012) ("Defendant argues this finding [procedural unconscionability] is undermined by *Concepcion*, specifically that portion of the opinion that implied most consumer contracts are contracts of adhesion.  However, that statement did not alter the test for procedural unconscionability. . . . Because the test for procedural unconscionability is the same as it was before *Concepcion* . . . the arbitration agreement at issue here is procedurally unconscionable.") (citations omitted.)

The Court's review of *Concepcion* indicates procedural unconscionability was not relevant to the Court's decision.  *See Coneff v. AT&T Corp.,* 673 F.3d 1155 (9th Cir. 2012) (Procedural unconscionability is "an inquiry for which *Concepcion* gives little guidance beyond a recognition of the doctrine's continued vitality"); *See also, Laster v. T-Mobile USA, Inc.,* 2012 WL 1681762 (S.D. Cal. 2012) ("The Supreme Court in *Concepcion* simply assumed ATTM's arbitration clause was a contract of adhesion, see 131 S.Ct. at 1750 ("the times in which consumer contracts were anything other than adhesive are long past"), thereby implying procedural unconscionability under California law").

The focus of *Concepcion* was whether the FAA preempted a state law forbidding class action waivers.  In other words, *Concepcion* concerned the terms of the contract (substantiative unconscionability).  *Conception* did not regard the manner in which those terms were presented (procedural unconscionability).  The degree of procedural unconscionability in a take-it-or-leave-it employment contract will vary with the facts of a given case, however, the take-it-or-leave-it aspect of the contract will always have *some* air of procedural unconscionability.  *See, Laster v. T-Mobile USA, Inc.,* 2012 WL 1681762 (S.D. Cal. 2012) (finding that when the totality of procedural unconscionability evidence was that a contract was offered on a take-it-or-leave-it basis, the "arbitration agreement is on the low end of the spectrum of procedural unconscionability").

Here, it is undisputed that Plaintiff, like *Martinez, Armendariz, Aral* and *Ingle*, signed the pre-printed Agreement "as a condition of [her] employment." *See* Declaration of Glenn Brown, Doc. 13, Attach. A ("The Agreement to Arbitrate accompanying this application must be read and signed in order for you to be considered for employment with the Company.") Plaintiff did not have an opportunity to negotiate the terms of the Agreement, and was offered the Agreement on a "take-it-or-leave-it" basis.  Brinker also acknowledges that all prospective employees are required to sign the Agreement to be considered for employment.  (Brown, Decl., ¶ 5.)

Brinker primarily argues that compulsory arbitration agreements are not unenforceable merely because they are made a condition of employment.  While true, this argument simply restates the general proposition that both procedural *and* substantiative unconscionability are required to invalidate an arbitration agreement.  Brinker makes no persuasive argument that the Agreement is not *procedurally* unconscionable.

Brinker is a series of national corporations with stronger bargaining power than Plaintiff. The Agreement was a prerequisite to employment and Brinker job applicants were not permitted to modify the agreement.  The Agreement was a take-it-or-leave-it agreement.  No other evidence of procedural unconscionability is identified.  The arbitration agreement was not obfuscated amongst various other contractual provisions, and the Agreement was conspicuously displayed to Plaintiff.  Indeed, Plaintiff was required to separately sign the arbitration agreement. The only indica of procedural unconscionability is the take-it-or-leave-it nature of the Agreement.  Thus, while the take-it-or-leave-it nature of the Agreement renders it procedurally unconscionable, the degree of procedural unconscionability is at the lower end of the spectrum.

**C.   Substantive Unconscionability**

"Substantive unconscionability addresses the fairness of the term in dispute." *Pokorny v. Quixtar*, 601 F.3d 987, 994 (9th Cir. 2010), quoting *Szetela,* 118 Cal.Rptr.2d at 867.  The focus of the inquiry is whether the term is one-sided and will have an overly harsh effect on the disadvantaged party.  *Harper*, 7 Cal.Rptr.3d at 423.  The amount of substantive unconscionability required varies depending on the amount of procedural unconscionability present.  *Armendariz,* 24 Cal.4th at 114.  Here, while procedural unconscionability is present, it

is not significant.  Thus, Plaintiff must show that there is significant substantiative unconscionability. *Evans v. Williams & Fudge, Inc.,* 2012 WL 3025164 (N.D. Cal. 2012) (finding that where "minimal procedural unconscionability" is found, "Plaintiff must make a substantial showing of substantiative unconscionability"); *Assaad v. American Nat. Ins., Co.,* 2010 WL 5416841 (N.D. Cal. 2010) (a "lower quantum of procedural unconscionability, coupled with the high degree of substantive unconscionability here, compels the conclusion that the mandatory arbitration agreement is unconscionable.")

Additionally, "an arbitration agreement cannot be made to serve as a vehicle for the waiver of statutory rights created by the FEHA." *Armendariz*, supra, 24 Cal.4th at 101; *Trivedi v. Curexo Technology Corp.*, 189 Cal. App.4th 387, 116 Cal. Rptr. 3d 804 (2010).  The statutory rights established by the FEHA are "for a public reason" and therefore cannot be waived. *Armendariz,* 24 Cal.4th at 100.  "[A]rbitration agreements that encompass unwaivable statutory rights must be subject to particular scrutiny." *Armendariz*, 24 Cal.4th at 100.

*Armendariz* is the leading California decision governing the substantive unconscionability of arbitration agreements. In *Armendariz*, two employees brought a wrongful termination action against their former employer, alleging violation of the FEHA and other claims, and the employer moved to compel arbitration.  *Armendariz* enumerated five minimum requirements for the lawful arbitration of rights under the FEHA pursuant to a mandatory employment arbitration agreement. Such an arbitration agreement is lawful if it:

> (1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum. Thus, an employee who is made to use arbitration as a condition of employment effectively may vindicate [his or her] statutory cause of action in the arbitral forum.

*Armendariz*, 24 Cal.4th at 102 (internal quotation marks omitted); *See also, Id.* at 103, n.8 ("We emphasize at the outset that our general endorsement of the *Cole* requirements occurs in the particular context of mandatory employment arbitration agreements, in order to ensure that such agreements are not used as a means of effectively curtailing an employee's FEHA rights.")

1    Plaintiff contends the Agreement is unconscionable because it does not meet the fourth

2    requirement.  Specifically, plaintiff contends that because the agreement states "the employee is

3    entitled to representation by an attorney throughout the proceedings at his or her own expense[,]"

4    the Agreement fails to provide for all the types of relief that would otherwise be available to

5    Plaintiff in court.  Additionally, Plaintiff argues the fifth requirement is not met because a

6    requirement that "fees and expenses *of the arbitration* shall be borne by the parties, pursuant to

7    the schedule set forth in the National Rules" precludes Plaintiff from recovering fees and

8    expenses preceding the arbitration, where the FEHA would permit a prevailing plaintiff to

9    recover all fees and costs.

10       **1.    Attorney's Fees**

11       In the employment context, an arbitration agreement cannot require the employee to bear

12   any type of expense that the employee would not be required to bear in court.  *Armendariz*, 24

13   Cal.4th at 110-11. In an FEHA case, unless it would be unjust, a prevailing plaintiff should

14   recover attorney fees, but a prevailing defendant is awarded fees only if the case was frivolous or

15   filed in bad faith.  *Chavez v. City of Los Angeles,* 47 Cal.4th 970, 985, 104 Cal.Rptr.3d 710, 224

16   P.3d 41 (2010).  From a public policy perspective, the award of attorney's fees in employment

17   discrimination actions is important since, "without some mechanism authorizing the award of

18   attorney fees, private actions to enforce such important public policies will as a practical matter

19   frequently be infeasible." *Horsford v. Board of Trustees of California State University*, 132 Cal.

20   App.4th 359, 394, 33 Cal.Rptr.3d 644 (2005), citing *Flannery v. Prentice*, 26 Cal.4th 572,

21   582-83, 110 Cal. Rptr. 2d 809, 28 P.3d 860 (2001) ("There is no doubt that privately initiated

22   lawsuits are often essential to the effectuation of the fundamental public policies embodied in

23   constitutional or statutory provisions, and without some mechanism authorizing the award of

24   attorney fees, private actions to enforce such important public policies will as a practical matter

25   frequently be infeasible.") (citations and quotations omitted).  Thus, a provision within an

26   arbitration agreement requiring a prevailing employee to waive her right to attorneys' fees under

27   the FEHA is substantively unconscionable. *Laughlin v. Vmware, Inc.,* 2012 WL 298230 (N.D.

28   Cal. 2012).

Brinker argues language in the Agreement providing that "the employee is entitled to representation by an attorney throughout the proceedings at his or her own expense[,]" does not waive Plaintiff's right to attorneys' fees.  Rather, Brinker suggests this provision simply states that Plaintiff is "responsible for her own attorney's fees *during* the pendency of the arbitration and does not in any way deprive her of her right to recover fees under the FEHA if she were to ultimately prevail."  (Def.'s Reply, 4: 6-15, Doc. 18.)  (Emphasis added.)

In *Laughlin v. Vmware, Inc.,* 2012 WL 298230 (N.D. Cal. 2012), the Northern District of California addressed a substantially similar issue.  In *Laughlin,* an employee was required to sign an arbitration agreement as a condition of employment, which stated that the employee was required to "separately pay [her] counsel fees and expenses."  *Id.* at *6.  *Laughlin* found that

> [b]ecause Defendant explicitly included a provision in the Employment Agreement that requires each party to separately pay attorney's fees, and this provision is included in the section of the agreement concerning arbitration, the court must construe this provision to mean something other than a reiteration of the default rule of the American system of litigation, by which each party pays his or her attorney's fees. As such, this provision regarding attorney's fees would be superfluous unless the court construes it to mean that Plaintiff must pay her own attorney's fees and expenses incurred during arbitration.

*Id.* at *6.  Accordingly, the *Laughlin* court found this attorney fee provision substantively unconscionable because it "prevent[ed] Plaintiff from recovering attorney's fees from Defendant in arbitration, even if she succeeds on her claims."  *Id.*

Similarly, Brinker's attorneys' fee language is an attempt to prevent Plaintiff from recovering her attorneys' fees, should she prevail on her FEHA claims.  Brinker's argument that the Agreement's attorney fee language merely states Brinker would not advance Plaintiff her attorneys' fees is an unreasonable interpretation of the Agreement.  Nothing in law, equity or the FEHA arguably stands for the proposition an employer would be required to advance an opposing litigant her attorneys' fees.  Thus, as in *Laughlin,* the Agreement's attorneys' fee language would be superfluous under Brinker's interpretation of the Agreement.

Under basic contract principles, the court construes the contract in a way that gives effect to all its terms.  Cal. Civ. Code, § 1641.  The contract must be read to avoid rendering any clause nugatory, inoperative or meaningless. Cal. Civ. Code § 1858; *Ratcliff Architects v. Vanir Constr.*

1   *Mgmt, Inc.*, 88 Cal.App.4th 595, 602, 106 Cal. Rptr.2d 1 (2001). Interpreting Brinker's attorneys'

2   fee language under this standard, the clause is reasonably construed as an effort to waive

3   Plaintiff's right to obtain attorneys' fees as a prevailing party.

4       Brinker additionally argues the Agreement does not waive Plaintiff's right to an award of

5   attorneys' fees because the Agreement provides there is "no surrender, by either party, of any

6   substantive statutory or common law benefits, protection or defense." This general "catch-all"

7   provision conflicts with the more specific attorney fee provision. "Under well-settled contract

8   principles, specific provisions control over more general terms." *Feibusch v. Integrated Device*

9   *Tech. Inc.,* 463 F.3d 880, 885 (9th Cir. 2006). "Where specific and general terms in a contract are

10  in conflict, those which relate to a particular matter control over the more general language."

11  *National Resources Defense Council v. Kempthrone,* 621 F. Supp. 2d 954, 983 (E.D. Cal. 2009).

12  Thus, a specific clause abrogating Plaintiff's right to attorneys' fees is not cured by a generic

13  catch-all phrase that does not specifically address attorneys' fees.

14      Lastly, Brinker argues that under American Arbitration Association Rules, an arbitrator

15  can award any remedy or relief that would have been available to Plaintiff in a civil action,

16  including an award of attorneys' fees. (Christian Decl., ¶ 8, Ex. C, Section 39(d).) However, the

17  rules of the American Arbitration association do not cure an otherwise unconscionable

18  contractual provision*. Trivedi v. Curexo Technology Corp*., 189 Cal.App.4th 387, 116

19  Cal.Rptr.3d 804 (Cal. App. Dist. 1, 2010) ("Even if that illegality could be saved by reference to

20  AAA rules, which is a dubious proposition, relying on [the AAA Rules, which] Trivedi was

21  never provided cannot relieve Curexo of the effect of the unlawful provision in the arbitration

22  clause which it drafted and insisted upon"); *O'Hare v. Municipal Resource Consultants,* 107 Cal.

23  App. 4th 267, 282 (2003) (this same argument was deemed "nothing more than an attempt to

24  make an end run around the legislative direction to evaluate the contract based upon its terms at

25  the time of execution.... [The employer] cite[d] no authority for the proposition it should be

26  relieved of the effect of an unlawful provision it inserted in the arbitration provision because" the

27  AAA rules stated otherwise)*; Fitz v. NCR Corp.,* 118 Cal. App. 4th 702 (2004) ("NCR

28  deliberately replaced the AAA's discovery provision with a more restrictive one, and in so doing

failed to ensure that employees are entitled to discovery sufficient to adequately arbitrate their claims. NCR should not be relieved of the effect of an unlawful provision it inserted in the ACT policy due to the serendipity that the AAA rules provide otherwise.") Thus, the AAA Rules do not cure the effect of an otherwise unlawful provision in their arbitration agreement.

Brinker's Agreement attempts to waive Plaintiff's statutory right to attorneys' fees under the FEHA. Such a statutory right is unwaivable under California law. The provision is substantively unconscionable.

### 2.    Fees and Expenses of the Arbitration

The Agreement provides that "[t]he fees and expenses of the arbitration shall be borne by the parties, pursuant to the schedule set forth in the National Rules unless otherwise awarded by the arbitrator in the final, written decision." (Declaration of Michael Christian, Ex. A, Doc. 12.) Plaintiff interprets this language as meaning "[t]he arbitration agreement does not provide for fees and costs incurred by [Plaintiff] leading up to the arbitration." (Pl.'s Opp., 5: 26-6, Doc. 16.) Defendant responds this language does not regard fees and expenses incurred prior to arbitration commencing and, further, the American Arbitration Association's Rules provide that "[t]he arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court including awards of attorney's fees and costs, in accordance with applicable law." (Christian Decl., ¶ 8, Ex. C, Section 39(d).)

The language cited by Plaintiff does not foreclose Plaintiff's right to collect fees and costs of this litigation, should she prevail. This language does not concern any fees or costs outside the administrative and logistic expenses associated with the arbitration itself. Reading the clause in its entirety – "[t]he fees and expenses *of the arbitration* shall be borne by the parties, *pursuant to the schedule set forth in the National Rules* (emphasis added)" – demonstrates the language was intended to explain how the costs of engaging the arbitration process are to be initially allocated. The schedule referred to in the clause supports this conclusion. *See,* American Arbitration Association's *Employment Arbitration Rules and Mediation Procedures,* p. 40-49 *available at* http://www.adr.org/aaa/faces/rules (The fee schedule for disputes arising out of employer-promulgated plans discusses how the administrative and logistic costs of the arbitration are

allocated amongst the parties, e.g., the employee pays a filing fee of $175, the employer pays a

non-refundable fee of $925, the employer pays the arbitrator's compensation, the employer pays

an administrative fee of $300 for each day of hearings held by an arbitrator, the employer pays all

expenses of the arbitrator, etc.)  The disputed language does not concern attorneys' fees or costs

occurring prior to commencement of the arbitration; thus, the language does not foreclose

Plaintiff's ability to recover those expenses - should she prevail on her claims.  On the contrary,

Plaintiff would have the same opportunity to recover her fees and costs in arbitration as she

would in a court of law.  *See,* Christian Decl., ¶ 8, Ex. C, Section 39(d) ("[t]he arbitrator may

grant any remedy or relief that would have been available to the parties had the matter been heard

in court including awards of attorney's fees and costs, in accordance with applicable law.")

**D.     Severability**

California Civil Code § 1670.5(a) provides that,

> [i]f the court as a matter of law finds the contract or any clause of the contract to
> have been unconscionable at the time it was made the court may refuse to enforce
> the contract, or it may enforce the remainder of the contract without the
> unconscionable clause, or it may so limit the application of any unconscionable
> clause as to avoid any unconscionable result.

The California Supreme Court has construed § 1670.5(a) as giving "a trial court some discretion

as to whether to sever or restrict the unconscionable provision or whether to refuse to enforce the

entire agreement." *Armendariz*, 99 Cal. Rptr. 2d 745, 6 P.3d at 695; *Bridge Fund Capital Corp.

v. Fastbucks Franchise Corp.,* 622 F.3d 996 (9th Cir. 2010).

Severability depends on whether an unconscionable term is "collateral" to the main

purpose of the arbitration agreement, or whether the entire agreement is "permeated" by

unconscionability, and evinces a systematic effort to disadvantage the employee. *See Armendariz*,

24 Cal.4th at 124, 99 Cal. Rptr.2d 745, 6 P.3d 669; *Hwang v. J.P Morgan Chase Bank, N.A.,*

2012 WL 3862338 (C.D. Cal. 2012).  In *Armendariz*, the California Supreme Court explained

that

> [t]he basic principles of severability that emerge from Civil Code section 1599
> and the case law of illegal contracts appear fully applicable to the doctrine of
> unconscionability. Courts are to look to the various purposes of the contract. If the
> central purpose of the contract is tainted with illegality, then the contract as a
> whole cannot be enforced. If the illegality is collateral to the main purpose of the

14

> contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate.

*Id.* at 124, 99 Cal.Rptr.2d 745, 6 P.3d 669 (emphasis added).  The "strong legislative and judicial preference is to sever the offending term and enforce the balance of the agreement."  *Dotson v. Amgen, Inc.,* 181 Cal. App. 4th 975, 986 (2010).

In determining whether unconscionable provisions permeate a contract, courts often look to the number of unconscionable clauses.  A high frequency of unconscionable clauses not only indicates an attempt to systematically disadvantage an employee, but it also makes it more likely that severance would force the court to rewrite the contract.  *See, e.g., Armendariz,* 24 Cal. 4th at 124 ("First, the arbitration agreement contains more than one unlawful provision . . . Second . . . the court would have to, in effect, reform the contract, not through severance or restriction, but by augmenting it with additional terms");  *Mercuro v. Superior Court,* 96 Cal. App. 4th 167 (2002) (lack of mutuality, unlawful fee-sharing provision and biased arbitration provider "indicate[d] a systematic effort to impose arbitration on an employee . . . as an inferior forum that works to the employer's advantage"); *Graham Oil Co. v. ARCO Products Co.,* 43 F. 3d 1244, 1248-49 (9th Cir. 1994) (refusing to enforce the entire arbitration clause because "the arbitration clause in this case is a highly integrated unit containing three different illegal provisions"); *Newton v. American Debt Services, Inc.,* 854 F. Supp. 2d 712, 729 (N.D. Cal. 2012) (arbitration clause contained multiple unconscionable provisions, where severing the provisions would "result in an arbitration clause that contains no process or standards in choosing an arbitrator" and "would require that the Court reform the contract by augmenting it with additional terms (rather than simply striking language).")

On the other hand, if an arbitration agreement contains one or two unconscionable provisions that are not central to the agreement and can be severed without the need to augment the contract, courts find severance appropriate.  *See, Grabowski v. Robinson*, 2011 WL 4353998 (S.D. Cal. Sept.19, 2011) (the court concluded that three substantively unconscionable provisions (including an attorney's fees provision) could be severed from an arbitration agreement which was not "permeated by unconscionability," thus rendering the agreement enforceable); *Laughlin*

*v. Vmware, Inc.,* 2012 WL 298230 (N.D. Cal. 2012) ("the substantively unconscionable provisions regarding cost-splitting and attorney's fees may be severed from the agreement" without "eviscerating the central purpose of the Agreement."); *Nelson v. Louisiana Elec. Rig,* 2006 WL 5671234, at *7 (C.D. Cal. Feb.22, 2006) (found a single unconscionable term could be severed because it was "collateral to the agreement's main purpose," and that "removing this provision would not amount to 'rewriting the contract'"); *Hwang v. J.P Morgan Chase Bank, N.A.,* 2012 WL 3862338 (C.D. Cal. 2012) (the court, after finding fee sharing and modification provisions unconscionable, severed the offending clauses because they were "collateral to the agreements" and "would not amount to rewriting the agreements.")

Here, the Court has determined a single clause in the Agreement to be unconscionable - the attorneys' fee provision.  The Court finds this provision is collateral to the Agreement and does not permeate the Agreement with unconscionability.  Moreover, severing this clause would not require the Court to augment the Agreement, because other portions of the Agreement, as well as the rules of the American Arbitration Association, would entitle Plaintiff, should she prevail, to any relief she could have obtained in this Court (including attorneys' fees and costs).  Accordingly, the unconscionable term regarding attorneys' fees is severed from the Agreement pursuant to California Civil Code § 1670.5, and the remainder of the Agreement may be enforced.

## CONCLUSION AND RECOMMENDATIONS

For the reasons stated above, the Court **HEREBY RECOMMENDS** that:

1.      The following clause be severed from the subject arbitration agreement: "at his or her own expense";

2.      The remainder of the arbitration agreement be enforced;

3.      Defendant's Motion to Compel Arbitration be **GRANTED;**

4.      The Court STAYS this Action pending the outcome of arbitration;

5.      The Court DENIES Defendants' Motion to Dismiss as Moot.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to Title 28 of the United States Code section 636(b)(1)(B) and this Court's Local

Rule 304.  Within fifteen (15) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to Title 28 of the United States Code section 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991)..

     IT IS SO ORDERED.

**Dated:**   **October 16, 2012**            /s/ **Barbara A. McAuliffe**
                                       UNITED STATES MAGISTRATE JUDGE